UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| NATHAN SIGLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEICO CASUALTY CO., and GEICO CORPORATION,<br><br>Defendants. | No.1:18-cv-01446-MMM-JEH<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Plaintiff Nathan Sigler respectfully submits this Response and Opposition to Defendants GEICO Casualty Co. ("GEICO Casualty") and GEICO Corporation's (collectively, "GEICO") Motion to Dismiss Plaintiffs' Amended Class Action Complaint.

**INTRODUCTION**

GEICO has systematically underpaid its Illinois insureds, like Plaintiff Sigler, who have suffered the total loss of their vehicles. (Am. Compl. ¶¶ 1-2, 41-44.) In its policies, GEICO promises to pay "Actual Cash Value" in the event of a total loss. (*Id.* ¶¶ 3, 31-33, 40.) GEICO defines Actual Cash Value in its policies as "***the replacement cost of the auto*** or property less depreciation or betterment." (*Id.* ¶¶ 3, 32-34.) GEICO, however, does not pay the total replacement costs before deducting for depreciation.

In Illinois, the replacement cost of an automobile includes sales tax, title transfer fees, and tag transfer fees. (*Id.* ¶¶ 4, 37-40.) Significantly, in its Motion to Dismiss, GEICO does not dispute that those taxes and fees are included within the meaning of "replacement cost." But

1

GEICO has a policy of not including tax and fees in the total loss settlement payment that it provides its insureds, and it did not include such tax and fees in the payment it made to Plaintiff after he suffered the total loss of his Dodge RAM. (*Id*. ¶¶ 41-43, 50-52.)   By failing to pay Plaintiff Sigler the cost of sales tax and transfer fees, GEICO failed to pay him the full replacement cost of his automobile, and thus breached the express terms of its Policy contract with Plaintiff Sigler.  (*Id.* ¶¶ 65-82.)

GEICO seeks to evade liability for its wrongful conduct by attempting to shield itself with Ill. Admin. Code tit. 50 § 919.80(c)(3)(A), which requires automobile insurers to include sales tax and transfer fees in the payment of replacement cost, but allows insurers to defer the payment of such tax and fees until after the insured purchases a replacement vehicle.  GEICO argues that it would have paid Plaintiff Sigler sales tax and transfer fees if he had submitted proof, within a limited window of time, that he purchased a replacement vehicle.

The fatal flaw in GEICO's argument, however, is that the Policy it drafted and entered into with Plaintiff Sigler (and the other Class members) did not require Plaintiff Sigler to purchase a replacement vehicle before he received full replacement costs.  While GEICO could, theoretically, have drafted a Policy that allowed it to defer the payment of tax and fees until after Plaintiff Sigler provided proof that he purchased or leased a replacement vehicle and to base its payment of sales tax and fees on the value of the replacement vehicle (rather than the total-loss vehicle), it did not do so.  Rather, GEICO contracted with Plaintiff Siegler (and the other Class members) to pay him the replacement cost of his vehicle, which, as the Complaint alleges, necessarily includes sales tax, title transfer fees, and tag transfer fees.  Because GEICO did not pay Plaintiff Sigler the full replacement cost of his vehicle, *an alleged fact that GEICO does not dispute*, GEICO breached its Policy contract.

2

GEICO Corporation also attempts to evade liability by contending that it was not a party to the Policy entered into between Plaintiff Sigler and GEICO Casualty. GEICO Corporation, however, cannot so easily escape liability. As alleged in the Complaint, GEICO Corporation drafted the Policy, induced Plaintiff Sigler to enter into the Policy, and devised the practice of not paying full replacement costs in total loss situations like this one—a direct derogation of Defendants' contractual obligations. (Am. Compl. ¶¶ 15, 21-22, 27.) There is a unity of interest and ownership between GEICO Corporation and GEICO Casualty, such that GEICO Casualty is no more than GEICO Corporation's alter ego.

## LEGAL STANDARD

"A complaint will survive a 12(b)(6) motion if, after the court disregards any portions that are 'no more than conclusions,' it 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

## ARGUMENT

### I.    PLAINTIFF HAS ADEQUATELY PLEADED BREACH OF CONTRACT

Plaintiff has alleged a breach of contract, not a violation of Ill. Admin. Code tit. 50, § 919.80(3)(A), as GEICO suggests. Plaintiff's breach of contract claim requires nothing more than for the court to interpret GEICO's policy language and determine whether GEICO fulfilled its contractual obligations to Plaintiff Sigler. The claim does not implicate any issue within the exclusive jurisdiction of a regulatory agency, and thus the doctrine of primary jurisdiction is inapplicable. Finally, GEICO cannot escape Plaintiff's claim by arguing that it satisfied Illinois' minimum legal requirements with respect to the payment of tax and transfer fees. The issue

raised in this case is not whether GEICO satisfies Illinois' minimum requirements, but rather whether GEICO breached its Policy's promise to pay the "replacement cost" of its vehicles.

### A. Plaintiff Is Not Seeking to Enforce Ill. Admin. Code tit. 50, § 919.80(3)(A).

Contrary to Defendants' argument (Defs.' Mem. at 6), Plaintiff is not seeking to enforce Ill. Admin. Code tit. 50, § 919.80(3)(A). Instead, Plaintiff's breach of contract claim is based on the express language of his Policy with GEICO.

GEICO's Policy promised to pay Plaintiff the cost of replacement for his vehicle. (Am. Compl. ¶¶ 3, 31-34.) It is undisputed that, in Illinois, the cost of a replacement vehicle necessarily includes sales tax, title transfer fees, and tag transfer fees. (*Id*. ¶¶ 37-39.) And it is undisputed that GEICO did not pay Plaintiff these necessary replacement costs—the cost of sales tax, title transfer fees, and tag transfer fees—when it paid Plaintiff under the Policy. (*Id*. ¶¶ 41-43, 50-52.) Thus, GEICO broke its Policy promise to pay Plaintiff the cost of replacement for his vehicle. GEICO's breach of an express promise made in its Policy is what provides Plaintiff his cause of action here.

Moreover, and contrary to GEICO's contention, Plaintiff neither relies on Ill. Admin. Code tit. 50, § 919.80(3)(A) nor even cites to Ill. Admin. Code tit. 50, § 919.80(3)(A) in his Amended Complaint. GEICO's assertion that there is no statutory private cause of action in Ill. Admin. Code tit. 50, § 919.80(3)(A) (Defs.' Mem. at 6) is thus irrelevant.[1] Plaintiff's claim is based on GEICO's Policy language.

---

[1] Defendants' citation to *Weis v. State Farm Mut. Auto. Ins. Co.,* 776 N.E.2d 309 (Ill. App. Ct. 2002), is likewise irrelevant. In that case, the plaintiff ***brought a claim for a violation*** of Ill. Admin. Code tit. 50 § 919.80(c)(1)(A), which requires insurers to meet certain requirements in determining the base value of a vehicle. The court dismissed the claim because there was no private right of action under Ill. Admin. Code tit. 50 § 919.80(c)(1)(A). 776 N.E.2d at 311-12. Notably, however, the court considered the plaintiff's separate breach of contract claim and dismissed it on completely separate grounds not at issue here. *Id.* at 312.

## B.      The Doctrine of Primary Jurisdiction Does Not Apply.

GEICO's invocation of the primary jurisdiction doctrine is also incorrect. (Defs.' Mem. at 7.) The primary jurisdiction doctrine applies "when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve. . . ." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001); *see also Illinois Bell Tel. Co. v. Glob. NAPs Illinois, Inc.*, 551 F.3d 587, 594 (7th Cir. 2008) (doctrine of primary jurisdiction applies "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ."). This case does not raise an issue within the exclusive original jurisdiction of any regulatory agency to resolve, and GEICO has not attempted to identify such an issue. Rather, this case requires nothing more than a straightforward determination of what GEICO promised to Plaintiff and the other Class members through its Policy contracts. This is a pure question of law, incontrovertibly within the province and expertise of the Court. *See Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997) (policy interpretation is a pure question of law); *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) ("Under Illinois law, the interpretation of an insurance policy is a question of law" properly decided by a court).

The primary jurisdiction doctrine has also been interpreted as allowing a "federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Arsberry*, 244 F.3d 558, 563 (7th Cir. 2001). In such instances, the court is merely seeking the agency's advice. *Id.* at 564. This case, however, simply does not require a complicated factual inquiry outside the Court's expertise. Again, this case requires nothing more

than a straightforward, and rather uncomplex, determination of the meaning of the language in GEICO's Policy, which is a matter of law for this court to decide. *See Am. States Ins. Co.*, 687 N.E.2d at 75 (policy interpretation is a pure question of law). This is not a case involving complicated inquiries, for which the Court would require a regulatory agency's assistance or expertise. *See Keeling v. Esurance Ins. Co.*, 2012 WL 699580, at *5 (S.D. Ill. Mar. 1, 2012) (declining to invoke primary jurisdiction doctrine where the court was "confronted with a more familiar issue-namely, whether defendant's conduct was deceptive and fraudulent in violation of several statutes."); *City of Chicago v. Purdue Pharma L.P.*, 2015 WL 2208423 *4 (N.D. Ill. May 8, 2015) (declining to invoke doctrine in case concerning prescription of opioids to treat chronic, non-cancer pain because the issue was "not a technical area in which the FDA has greater technical expertise than the courts—as every day courts decide whether conduct is misleading.") (citations omitted).

  Indeed, pure questions of law, like the Policy interpretation required here, should not be referred to an agency under the primary jurisdiction doctrine. *See Baltimore & Ohio Chicago Terminal Railroad Co. v. Wisconsin Central Ltd.,* 154 F.3d 404, 411 (7th Cir. 1998) ("Neither of the parties suggests that the *Chevron* doctrine extends the doctrine of primary jurisdiction to pure issues of law, even if the law in question is the organic statute of the regulatory agency. . . ."). In fact, given the expertise of courts over questions of law concerning policy interpretation and coverage issues, even where a case involving a question of insurance coverage *overlaps with a concurrent case pending before a regulatory body*, the court should not invoke the primary jurisdiction doctrine. *Westport Ins. Corp. v. Atl. Painting Co.*, 2007 WL 1302972 *2 (N.D. Ill. May 3, 2007) ("[W]here a coverage dispute connected with a workers' compensation claim is pending in both the Commission and the circuit courts, the circuit court has paramount

jurisdiction over the coverage issue.") (*citing Employers Mutual Cos. v. Skilling*, 644 N.E.2d 1163 (Ill. 1994)). The doctrine of primary jurisdiction has no place in this case.

> C.  **GEICO's Policy Language Does Not Condition Payment of Mandatory Replacement Taxes and Fees on Proof of Purchase or Lease of a Replacement Vehicle.**

GEICO further argues that Plaintiff failed to state a claim for breach of contract because Ill. Admin. Code tit. 50 § 919.80(c)(3)(A) allows insurers to defer paying sales tax and title/tag transfer fees until after insureds have proven that they purchased or leased a replacement vehicle. (Defs.' Mem. at 4-5.)  GEICO argues that its Policy incorporates Section 919.80(c)(3)(A), and thus, that even though Plaintiff has adequately alleged that GEICO failed to pay sales tax and title/tag transfer, Plaintiff has not alleged a breach of contract because Plaintiff has not alleged that he proved to GEICO that he purchased or leased a replacement vehicle.  GEICO's argument is unavailing because it fails to distinguish between the minimum regulatory standards (set forth in Section 919.80(c)(3)(A)) and the express promise that GEICO made in its Policy.

In its Policy, GEICO promised Plaintiff that it would pay replacement cost in the event of a total loss to his insured vehicle. (Am. Compl. ¶¶ 31-35.)  GEICO does not dispute that the replacement cost includes sales tax and title/tag transfer fees.  Plaintiff's Policy *did not* state that Plaintiff would only get reimbursed for tax and fees once he proved that he purchased or leased a replacement vehicle.  GEICO did not make that condition a part of the contract

Section 919.80(c)(3)(A), which requires payment of sales tax and transfer fees, permits such taxes and fees to be paid either (a) directly, *or* (b) on proof of vehicle replacement.  By requiring the payment of sales tax and transfer fees, but allowing such tax and fees to be paid on proof of vehicle replacement, Section 919.80(c)(3)(A) establishes a minimum standard for paying taxes and fees.  In fact, Part 919 explicitly asserts that it is setting *minimum* standards:

7

"The purpose of this Part is to set forth *minimum standards* for the investigation and disposition of claims arising under contracts and certificates issued to residents of Illinois." Ill. Admin. Code. Tit. 50 § 919.20 (Scope and Purpose) (emphasis added).[2]

But Section 919.80(c)(3)(A) does not mandate that insurers only pay the cost of tax and fees upon proof of vehicle replacement, and GEICO does not so contend. Rather, Section 919.80(c)(3)(A) explicitly allows insurers to satisfy the requirement of paying sales tax and transfer fees directly, without conditioning such payment on proof of vehicle replacement. Here, Plaintiff has alleged that GEICO promised to pay replacement costs, including sales tax and transfer fees, without requiring proof of vehicle replacement. (Am. Compl. ¶ 35.) GEICO is bound by what it expressly promised, and not by the bare minimum requirements set forth in Section 919.80(c)(3)(A). *See, e.g., Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 805 (7th Cir. 2000) (defendant breached employment contract even though it complied with statutory requirements because "Head's contract grants him greater rights than the Illinois School Code appears to grant him."); *Farm Bureau Mut. Ins. Co., Inc. v. Alamo Rent A Car, Inc.*, 744 N.E.2d 300, 305 (Ill. App. 1st Dist. 2000) (holding insurance statute requiring primary auto

---

[2] The fact that Section 919.80(c)(3)(A) sets only *minimum* standards is seen not only in the timing element of one of the options set forth – i.e., allowing payment of sales tax only *after* incurred – but also in the amount of sales tax owed. In other words, insurers are permitted to promise in the Policy to promise to pay sales tax in an amount based on the *replacement* vehicle (up to and not to exceed the value of the total-loss vehicle) without running afoul of the law. In that scenario – where an insurer promises to pay only the amount incurred in actual replacement – if an insured's total-loss vehicle is valued at $20,000, but she replaces it with a vehicle worth $10,000, the insurer is permitted to promise to pay sales tax based on $10,000 (and not $20,000) without running afoul of the law. The other option explicitly mentioned in Section 919.80(c)(3)(A), of course, is to pay sales tax irrespective of and prior to replacement, if any, which is precisely what GEICO promises. The fact that GEICO *could* have promised less than it did without running afoul of statutory requirements is irrelevant – GEICO is bound by what it did promise, not what it arguably could have. GEICO promised more than the minimum requirements set forth in the statute, and it is bound by its promise.

rental coverage was a minimum requirement: "[W]e cannot ignore the laws and public policy of the State, which permit freedom of contracting between competent parties . . .. Because the parties may properly contract as to which insurer is responsible for primary coverage as long as statutory minimum requirements are met, we hold that, as a matter of law, the rental agreement between Alamo and Fletcher was valid and enforceable."); *Ervin v. Travelers Pers. Ins. Co.*, 317 F. Supp. 3d 1014, 1018 (N.D. Ill. 2018) (holding that Illinois insurance law a minimum threshold for what fire-insurance policies must cover, and that "Insurers are free to provide broader coverage than [Illinois law] requires; what they may not do is provide less coverage.") (citations omitted).

*Hertz Corp. v. Garrott*, 606 N.E.2d 219 (Ill. App. Ct. 1992) is instructive. *Garrott* concerned an Illinois statute requiring car rental agencies to include liability protection of $50,000 in the aggregate. *Id*. at 221. By contract, Hertz agreed to provide liability protection significantly in excess of the statutory requirements. *Id*. at 222. Due to the renter's misconduct, Hertz argued that its liability obligations were limited to the statutory requirement, and not the contractually agreed-upon amount. *Id*. The court disagreed, holding that:

> Nevertheless, we find that the statute merely prescribes the minimum amounts needed by a rental agency to conduct business in the State. The statute in no way defines the scope of the obligation that may be assumed by the rental agency by separate agreement. ***If Hertz wanted to provide liability protection at a level that would merely satisfy the minimum requirement under the statute, it was free to have done so in the contract. It did not choose to do so, however***.

*Id*. at 224 (emphasis added).

The same is true here. Section 919.80(c)(3)(A) sets forth minimum requirements for the payment of sales tax and transfer fees. Like Hertz, in the *Garrott* case (above), if GEICO had wanted to provide coverage "that would merely satisfy the minimum requirement under the statute, it was free to have done so *in the contract*." *Id.* at 224. Also like Hertz, GEICO chose

9

not to do.  Rather than draft the Policy such that the payment of sales tax and fees was conditioned on proof of vehicle purchase, GEICO contractually agreed to pay tag/title transfer fees and sales tax based on the value of the total loss vehicle, irrespective of replacement.  GEICO is bound by the terms of its contract, not by a lesser obligation imposed by statute.

GEICO's argument that Section 919.80(c)(3)(A) is incorporated by law into the statute is thus irrelevant.  Even if the Section 919.80(c)(3)(A) was incorporated (which it is not), it merely defines a minimum standard.  It is not inconsistent with GEICO's contractual promise to directly pay replacement cost without proof of vehicle replacement, and thus does not affect GEICO's contractual promise.

*Bastian v. United Servs. Auto. Ass'n*, 137 F. Supp. 3d 1272 (M.D. Fla. 2015) is instructive on this point, and is on all fours with this case.  *Bastian* involved Florida law, which like Illinois law: 1) requires payment of sales tax and 2) allows insurers to condition payment on replacement of the total-loss vehicles.  Fla. Stat. § 626.9743.  In *Bastian*, the defendant insurer, like GEICO here, defined "actual cash value" as the cost to replace the total-loss vehicle, and contained no policy language conditioning payment on replacement.  *Id.* at 1276 (defining ACV) and 1282 ("USAA has not elected the option [to condition payment of sales tax on replacement]…At best, the Policy says nothing on the topic, which the Court should construe in favor of the insured.").  Further, the insurance policy at issue in *Bastian* included a clause stating that the policy conformed to applicable statutes,[3] which the insurer, like GEICO here, argued

---

[3] Although GEICO cites to its conforming clause as evidence that the Policy promises to pay sales tax and transfer fees only if incurred (Defs.' Mem. at 4-5), the Policy states that the conforming clause GEICO cites applies only when the terms of the policy "are in conflict with the statutes of Illinois."  Here, there is no conflict between GEICO's Policy and Section 919.80(c)(3)(A), which expressly permit the very that GEICO promises—payment of sales tax and transfer fees based on the value of the total-loss vehicle, irrespective of replacement.  Thus, the conforming clause is irrelevant—there is no conflict triggering reformation or amendment of

allowed it to pay sales tax only after it was incurred by insureds. *Id.* at 1280 ("USAA now argues that the Policy should be read with section 626.9743(9) as an essential component of the Policy…USAA contends that Florida courts will incorporate statutory provisions…where the policy is otherwise silent so that USAA may pay only incurred sales tax.").

In *Bastian*, the court rejected the insurer's argument, stating that it read the relevant statutory provision "to allow, but not require, insurers to choose in their policies to pay sales tax as incurred." *Id.* at 1283. The *Bastian* court further stated that it "sees nowhere in the Policy where USAA could be said to have chosen this option." *Id.* Thus, the court rightly recognized that an insurer is bound by its chosen policy language and could not escape liability by appealing to a statute setting forth minimum requirements for the payment of sales tax.

Similarly, in *Roth v. Geico Gen. Ins. Co.*, 2018 WL 3412852 (S.D. Fla. June 14, 2018). GEICO argued that Fla. Stat. § 626.9743 trumped its policy language and allowed it to pay sales tax in the amount incurred.[4] The court disagreed, granting summary judgment to the plaintiff and a certified class of Florida plaintiffs: "GEICO's reliance on Fla. Stat § 626.9743(9) is unavailing, as *that statute cannot limit coverage to less than what is provided for in the Policy*." *Id.* at *4, n. 5 (emphasis added).

Here, Plaintiff has alleged that GEICO contractually promises to pay replacement costs (including sales tax and title/tag transfer fees) and that the Policy does not condition GEICO's payment of those costs on insureds replacing their vehicles and incurring the costs. (Am. Compl. ¶¶ 3-5, 31-35, 65-82.) Because GEICO did not pay Plaintiff (and the other Class members) his

---

the policy promise. *Medina v. Public Storage, Inc.,* 2014 WL 1715517, at *31 (N.D. Ill. Apr. 30, 2014) (finding a conformity clause irrelevant because "[a] predicate for operation of the conformity clause is a 'conflict' with state law.").

[4] Notably, in its Florida policies, GEICO defines Actual Cash Value as it does in its Policy here, i.e. as the costs of replacement less depreciation. *Id.* at *3-4.

total replacement costs in this total loss situation, it breached its contract with Plaintiff (and the other Class members).

## II.     PLAINTIFF HAS STATED A CLAIM AGAINST GEICO CORPORATION

GEICO Corporation, not GEICO Casualty, advertised and offered automobile insurance to Plaintiff Sigler. (Am. Compl. ¶ 21.)  After he applied through GEICO Corporation, GEICO Corporation made the determination, based on several factors, including his credit score, to write him a policy through its GEICO Casualty subsidiary. (*Id.* ¶¶ 21-22.)  Plaintiff Sigler had no role in determining which GEICO entity that would be listed on his policy. (*Id.* ¶ 22.)  GEICO Corporation drafts the policies, implements the underwriting, sets the premium rate, and determines the claims handling processes for GEICO Casualty. (*Id.* ¶ 15.)  GEICO Corporation made the decision not to pay Plaintiff Sigler the full replacement value of his vehicle. (*Id.* ¶ 27.)

On a motion to dismiss, allegations of alter ego liability are evaluated pursuant to the Rule 8 plausibility standard. *UIRC-GSA Holdings Inc. v. William Blair & Co.*, 289 F. Supp. 3d 852, 859 (N.D. Ill. 2018).  An "alter ego relationship is a question of fact to be determined by the circumstances of each case." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987).  If a complaint "fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913 (2007) (quoting *Keller Sys., Inc. v. Transport Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1001 (N.D. Ill 2001)).[5]

---

[5] A court "may apply alter ego liability to contractual claims." *UIRC-GSA Holdings*, 289 F. Supp. 3d at 858-59.  GEICO argues that "courts apply more stringent standards in determining whether to disregard corporate formalities" in breach of contract actions (Defs.' Mem. at 9.), but GEICO does not cite any case suggesting that a different test for alter ego liability is applied in breach of contract actions than in tort actions.  Not is there any suggestion that there is a heighted

Illinois applies a two-part test for alter ego liability: "first, there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and, second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction fraud or promote injustice." *Trustees of Chicago Painters v. Destiny Decorators, Inc.*, 2009 WL 3188687 at *10 (N.D. Ill. Sept. 30, 2009) (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994)).  The first prong, unity of interest and ownership, is measured by "evidence of misrepresentation; commingling of funds, assets, or *identities*; undercapitalization; failure to operate at arm's length; and failure to comply with corporate formalities." *Int. Fin. Services Corp. v. Didde Corp.*, 2002 WL 598512, at *3 (N.D. Ill. 2002) (emphasis in original) (denying motion for summary judgment on alter ego liability where defendants commingled their identities through the use of a common "brand name.").

Here, Plaintiff has alleged facts showing unity of ownership, unity of interest, commingling of identities, and failure to operate at arm's lengths.  **First**, as to common ownership, GEICO Casualty is a wholly owned subsidiary of GEICO Corporation.  (Am. Compl. ¶¶ 12, 26.)  **Second**, GEICO Casualty is located at the same address as GEICO Corporation. (*Id.* ¶ 14), a fact which is indicative, if not dispositive, of an alter ego relationship.  *See Fuller v. Midland Credit Mgmt. Inc.*, 2014 WL 883757, at *8 (N.D. Ill. Mar. 6, 2014) (citing allegation that parent was located at same address as subsidiary as one reason for denying motion to

---

*pleading* standard for alter ego liability in breach of contract actions.  Moreover, in the case relied upon by GEICO, the court explained its reference to more stringent standards by the fact that plaintiffs in contractual actions could have negotiated terms that would have bound the alleged alter egos.  *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015).  Here, nothing in the four-corners of the Amended Complaint suggests that Plaintiff Sigler would have been able to negotiate changes to the terms of GEICO's form insurance policy.

dismiss alter ego liability claim).  ***Third***, as to failure to operate at arm's length, GEICO Corporation controls and directs GEICO Casualty's entire business, providing the policies, implementing the underwriting, setting the premium rates, and determining the claims handling processes (Am. Compl. ¶ 15).  *See Fuller*, 2014 WL 883757, at *8 (denying motion to dismiss alter ego liability claim where parent devised policies and practices of subsidiary).  ***Fourth***, unity of interest is evidenced by the fact that GEICO Corporation performs the work of soliciting automobile insurance customers, and then provides policies through GEICO Casualty (Am. Compl. ¶¶ 21-24).  *See United States v. All Meat & Poultry Prod. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 828 (N.D. Ill. 2007) (denying motion to dismiss alter ego liability claim where shareholders managed the corporate defendants and operated them as mere instrumentalities of their own enterprise).  ***Fifth***, GEICO Corporation commingles its identity with that of GEICO Casualty by using the "GEICO" acronym, alone, to refer to both itself and all of its subsidiaries, including GEICO Casualty, without distinction.  (Am. Compl. ¶ 20).  *See All Meat¸* 470 F. Supp. 2d at 828 (denying motion to dismiss alter ego liability claim where defendants held themselves out as an integrated entity and operated as such).  Plaintiff has thus plausibly alleged a unity of interest and ownership between GEICO Corporation and GEICO Casualty.[6]

---

[6] At this stage, prior to any discovery, Plaintiff cannot allege facts relating to commingling of funds or assets, undercapitalization, or failure to comply with corporate formalities, which require access to Defendants' business records.  *See Vertex Ref., NV, LLC v. Nat'l Union Fire Ins., Co. of Pittsburgh, PA*, 2017 WL 977000, at *4 (N.D. Ill. Mar. 14, 2017) ("Rule 8(a) does not require that Vertex allege more details concerning the manner of National Union's control; such a burden would require Vertex to have access to National Union's and Assurance's business records before discovery.").  Moreover, none of the cases GEICO cites suggests that these are necessary elements of an alter ego relationship or that they must be pleaded to overcome a motion to dismiss.

The second prong of Illinois' two-part test is "satisfied with evidence of fraud or injustice." *Trustees of the Chicago Painters v. Destiny Decorators, Inc.*, 2009 WL 3188687, at *10 (N.D. Ill 2010). "Illinois law requires only that in order to satisfy the second prong there be 'some element of unfairness, something akin to fraud or deception or the existence of a compelling public interest.'" *Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.,* 915 F. Supp. 939, 942 (N.D. Ill. 1996) (quoting *Pederson v. Paragon Pool Enter.,* 574 N.E.2d 169 (1st Dist. 1991)).[7]

Here, GEICO Corporation held itself out to Plaintiff (and the other Class members) as offering insurance, induced Plaintiff to enter into the Policy, and devised the scheme not to pay Plaintiff the full replacement cost of his vehicle. (Am. Compl. ¶¶ 20-21, 27.) GEICO Corporation, which drafted the language promising to pay Plaintiff replacement value (*Id.* ¶¶ 15-16), knew that Plaintiff would be denied his contractually-promised benefits, and profited from the refusal to pay these benefits. *See United States ex rel. Roger B. Schagrin, v. LDR Indus.*, 2019 WL1254923, at *2 (N.D. Ill. 2019) (denying motion to dismiss alter ego liability claim where company owners knew about company's misconduct and profited from misconduct). As the Amended Complaint alleges, "it would promote injustice by allowing GEICO Corp. to profit from its scheme, which directs and which it facilitates through [GEICO Casualty] of not paying the total amount of the Actual Cash Value promised by its contracts." (Am. Compl. ¶ 27.)

Plaintiff's inclusion of GEICO Corporation as a defendant in this case is not "convoluted," as Defendants contend. (Defs.' Mem. at 11.) It is simply the result of GEICO

---

[7] Despite GEICO's suggestion (Defs.' Mem. at 10), a showing of fraud or injustice does not require a showing that the subsidiary could not satisfy a judgment.

15

Corporation inducing Plaintiff Sigler into the policy and controlling the scheme that caused him to suffer damages.

## CONCLUSION

For the reasons stated above, Plaintiff Sigler respectfully requests that the Court deny GEICO's Motion to Dismiss.[8]

Dated:  March 26, 2019

Respectfully submitted,

By *Joel E. Brown*
Joel E. Brown
416 Main Street, Suite 1300
Peoria, Illinois  61602
Telephone:  309-673-4357
jb@joelebrown.com

Adam J. Levitt
Daniel E. Ferri
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com

Edmund A. Normand*
Jacob Phillips*
**NORMAND LAW, PLLC**
62 West Colonial Street, Suite 209
Orlando, Florida  32814
Telephone:  407-603-6031
ed@ednormand.com
jacob@ednormand.com

*Counsel for Plaintiff
and the Proposed Class*

* admitted *pro hac vice*

---

[8] Plaintiff Sigler consents to the dismissal, without prejudice, of his request for injunctive relief.

CERTIFICATE OF SERVICE

      I hereby certify that on March 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. John P. Heil and Mr. Seth A. TeBeest, P.O. Box 6199, 300 Hamilton Boulevard, Peoria, IL 61601, and all other attorneys of record who have appeared herein.

      /s/ Joel E. Brown
Attorney at Law
416 Main Street, Suite 1300
Peoria, IL 61602
Phone: 309-673-4357
Fax: 309-673-6119
Email: jb@joelebrown.com